Good morning, Your Honors. May it please the Court, I am here on behalf of Petitioner Mr. Lopez-Galicia. Your Honors, ordered two cases to be discussed here prior, sorry, after the 28Js were filed in this case. It is my understanding that the government is going to not be arguing the identity theft statute today, and rather focusing on the recklessly endangering statute, which is what I'm prepared to argue today. So the State v. Medina case is involving the identity theft statute. Your Honors, similar to the argument you just heard regarding Skidmore deference for a criminal statute here in Oregon, we are arguing that Skidmore does also apply to this case. As to why the Ninth Circuit should not, this Court should not defer to the BIA decision in this case, Petitioner argues that Leal and Hernandez were inaccurately applied to the statute for recklessly endangering. It's inconsistent and invalid reasoning, which is only owed Skidmore deference. Your Honors, the two key issues on the reasoning that the BIA did not get correct here is the lack of eminency and the lack of death in this particular statute in Oregon. So the BIA did not acknowledge these material differences, and therefore their analysis is flawed. Well, does it make sense in light of Hernandez v. Lynch to do a Ventura remand for the BIA to take a look at it in the first instance? Your Honor, I believe the remand in that case was due to the minimum conduct test that the Fifth Circuit applies rather than the reasonable probability test that the Ninth Circuit applies. Thus, the remand was on that issue in the way that the BIA did not use the proper test in that circuit. So that is my understanding. I do believe that inevitably a remand for the BIA to properly apply precedent would be appropriate. However, that case is a different test than the Ninth Circuit uses. Is the BIA going to look that matter of O.A. Hernandez over again, though, upon remand? Yes, Your Honor. Well, wouldn't that make a difference in this case as well, depending on what they say about their own presidential decision? Yes, Your Honor. My understanding on that case is that while the statute was analyzed, it was not analyzed under the correct test, so that it's difficult to apply the remand's analysis to this decision that Your Honors need to make today because the different test that the Fifth Circuit applies does not apply here in the Ninth Circuit. But yes, the conduct in that statute in O.A. Hernandez, I argue, is materially different than the conduct here in Oregon, primarily because the statute includes danger of serious bodily injury that is eminent, and the eminence of danger is directly related, Your Honor, to foreseeability and to the morally turpitudinous nature of the crime. The petitioner would argue that the less eminent a potential harm is, the less vile and the less depraved, so that Oregon does have an overbroad statute because their concepts of risk are overbroad. The precedent on Silva Trevino and crimes of moral turpitude would hold, Your Honor, that we're looking for vile and base. Why don't you walk us through the elements of the Texas statute that they relied on in matter of Hernandez and compare it back to this particular statute to show us why there's a lesser harm contemplated in this particular statute. Yes, Your Honor. The Texas statute under the Texas Penal Code includes recklessly engaging in conduct that places another in eminent danger of serious bodily injury, and the court focused on the eminence and the eminent death portion of the statute so that the conduct prescribed in that statute is more serious than the Oregon statute would contemplate. And, Your Honor, in my briefing I went through the criminal commentary and the foundation for the ORS as written that codifies a zone of danger concept. But, Counsel, does the Oregon statute, in your view, require a threat of death or foreseeability of death? Your Honor, it does require serious bodily injury. Right, but you said that the deficiency in the BIA decision was due to lack of consideration of the death factor. Yes, Your Honor. But why is that your argument if the Oregon statute doesn't contain that component? My argument, Your Honor, is that without the mention of death, the Oregon statute criminalizes less culpable or less intense level of conduct, so that death is not a foreseeable harm in that particular statute. So just so I understand your argument, so you're saying that the BIA should have found that the Oregon statute didn't rise to the level required because the Oregon statute does not contain the death component that you are arguing for? Yes, Your Honor. Okay. But the other key here is the, excuse me, the eminency argument or the eminency word, and that Petitioner continually argues since opening at the EOIR level that the word eminent and the foreseeability of the harm that one is committing by recklessly engaging in something must have a serious level of harm to fall into criminal crime of moral turpitude. So what case authority are you relying upon to support your argument that the lack of eminency is fatal to the analysis in the BIA decision? What case supports your argument? Well, Your Honor, there isn't a case that says that. What the cases say is that the actual risk of eminent death to another person, like Ramirez-Contreras out of the Ninth, is why the conduct is a crime of moral turpitude. So looking at the case law and the precedent, there is an eminency requirement along the lines of cases that... Was that because the statute contained that requirement or because that is generally a requirement? So if the statute contains that requirement, I can see why that would be discussed. But if the statute does not contain that requirement, is it still necessary in order for the crime to fit within the definition? Your Honor, the statutes that we're looking at do all have the word eminent in them, so they are specifically the legislature drafted that statute with that word. But that doesn't help us in looking at the Oregon statute because the Oregon statute does not contain that language. So what we would have to do then, Your Honor, is look at what the criminal commentary and what the appellate courts have done in Oregon regarding this particular crime. The government brings up State v. Cook, which is an appellate decision out of June 2017. They argue that that case is demonstrative of why the crime should be a moral turpitude crime. However, I also am going to use that case to argue that the appellate courts have applied this recklessly endangering statute with a zone of danger concept. The conduct need not actually expose another to harm. If Your Honors are familiar with the facts in that case, there was an attempt at an arrest for a violation of a restraining order. A father was going to be arrested eventually, and there is a sort of standoff. The facts are disputed in terms of the defense's facts and the prosecution's facts in this case. But State v. Cook actually was reversed because the court did not find that the defendant was aware of the risk that he was placing his child. His child was in his arms at some point. There were tasers down by officer's sides. No one was pointing weapons at the defendant or the child, and the court said that they really could not support a finding that the defendant was aware of the risk. Awareness of the risk does appear to be, after State v. Cook, does appear to be a requirement of the Oregon statute. Doesn't that undercut your argument that it's not a crime of moral turpitude then? Because you need, in order to be convicted of this offense, you need an awareness of the substantial risk of physical injury, serious physical injury to another person, right? Right. And my argument is that that case... Yes, Your Honor. Recklessly is much different than intentional conduct. And the State v. Cook case is indicative of the Oregon appellate courts requiring awareness of the defendant, but also not requiring that actual harm be in the situation. So the prosecutor need not prove that the child was going to be shot, the child was in danger. The facts of that case that are interesting is that the court holds that nothing in the record suggests the defendant took any actions of a sort that he would have recognized created a substantial risk of prompting a significant physical response by the officers. No evidence indicates that he became aware that any officers had drawn their tasers until after he had let his child down and the child was safe. The officers were speaking in a soothing tone of voice during the encounter, and no evidence suggests that the officers did anything that defendant would have recognized as escalating the riskiness of the situation. That case, Your Honors, is the latest appellate court case to analyze this statute in terms of what a defendant had to have in their mind and what kind of behavior would be culpable conduct. But, Counsel, we have held that recklessness is a sufficient men's ray to constitute the... That's correct, Your Honor. And my argument is that the conduct in this case differs, so that we do have the same men's ray, but the actus reas is not sufficiently reprehensible in the Oregon statute because it's overbroad. And that is because the commentary and the appellate decision, Stacey Cook, that the government cites on their behalf, actually shows that there is a hypothetical potential risk being criminalized, that a zone of danger is going to include potential victims, potential harm, and eminence is directly related to the foreseeability and the moral turpitudinous of the crime. And I'm out of time. Well, you have one minute and 52 seconds for a rebuttal. Rebuttal. Thank you. All right. We'll hear from the government. Good morning again, Counsel. Good morning, Your Honors. Again, Andrew Nsinga on behalf of the Attorney General. Petitioner knew and consciously disregarded a substantial risk of death or serious physical injury. Cook radically undermines her attempts to suggest that this is simply some sort of negligence crime. Cook is entirely about a conscious disregard. It's nothing about substantial risk. This is purely about a conscious disregard. And they said the defendant in that case didn't know and consciously disregarded because it was a very uncertain situation with police and him in an interaction. It was a face-to-face interaction where the defendant is holding the child, and the State still said, no, he didn't know or kind of consciously disregarded that harm. Dwayne Estalvired tends to be met by showing a case where the Board applied it in an overbroad context, relying on a case in which the State narrows it does not aid Petitioner here. And then when we look at the agency's decision to which this Court does owe a complicated level of deference and right of Hernandez and the other situations. Well, that's why I asked Counsel whether it made sense to remand for the BIA to reconsider that because now that the Fifth Circuit has ruled, the BIA presumably is going to take a look at the matter of Hernandez again, and we don't know what they're going to say about it. Well, this is the unusual situation with circuit splits, Your Honor. The reason it's no is Hernandez was decided on the realist probability test that the majority of the Court's appeals follow. The Fifth Circuit files what's called a minimum reading test. It sort of is a non-Dwayne Estalvired because they do occasionally run into hypotheticals, which is the problem in the Board's view. So when the Board revisits it, they're not going to revisit in any way their decision on the realist probability test. The only way they're going to address it is under the Fifth Circuit's test. So the fact that the Fifth Circuit remanded the case is frankly irrelevant because it's on a radically different test. So at this point, we would still say that in terms of the expansion from death into death and serious physical injury, there should be Chevron deference to that aspect of the agency's decision. Now, obviously, there was imminence in the Texas statute, and there is not here. So we would ask that that sort of aspect of it should be afforded Chevron, excuse me, Skidmore deference. So we are kind of in an unusual situation where there's one issue under Chevron and one issue under Skidmore. But regardless of the level of deference here, this Court has leal. No harm is required. We're always talking about a possibility, a probability. And so Petitioner can say imminence, all that Petitioner wants to say it, but what we need is what is the difference between saying actual risk and substantial risk? Well, the difference in leal, though, is that there was imminent, substantial risk of imminent death. And as I read the Oregon statute, there's no imminency requirement. Correct. So are you saying that on that issue, it should still be Chevron deference? No, on that issue, that would be Skidmore deference. Skidmore deference. Yes, Your Honor, because Hernandez did not address that. That was obviously an aspect of the Texas statute. So, but really what Petitioner wants to hang his hat on is one word that is largely explained. What is the difference, for example, between, in terms of moral turpitude, because that is really what we're talking about here. We're not talking about purely what do cases say. We are talking about how does I know and don't care about the harm to other people. Well, the harm is temporarily, it's going to happen sooner. Well, it might happen in a couple days. What is ultimately the thing is you have to know and you don't care. You don't care that the harm may occur in a couple days. And again, there is no actual harm. So what we are always talking about is a probability of harm. Whether that harm occurs today, tomorrow, it does not matter. If you shoot someone and they die because you shoot them in the face and die immediately, that's murder. You shoot them in the leg and they bleed out next day, that's murder. What we have here is a culpable state of mind of recklessness, which Petitioner concedes is sufficient, and reprehensible conduct. You don't care that someone could die or have serious physical injury. And I think serious physical injury bears emphasis here. Many of the cases cited in Petitioner's reply brief deal with physical injury under, as I mentioned before, the subsection 7 of the statute. Serious physical injury is under subsection 8 of the statute. So when we look at those cases, we need to be mindful that those aren't serious physical injury cases. So what we ultimately look at here is we have Leal, then we have Hernandez, and we have the decision in this case. Ultimately, the court owes either a degree of Chevron and Skidmore deference. And the fact that Petitioner just did not care about the safety of other people in the society demonstrates that this is a crime involving moral turpitude. Unless Your Honors have any further questions? It appears not, Counsel. Thank you. Rebuttal. So much stuff. Your Honors, in terms of the reprehensibility of the conduct that we're talking about, I think that's the core of crimes of moral turpitude analysis. Pulling from Silva-Trevino, reprehensible conduct, Almanza, vile, base, depraved, evil mind, ladder sing, vicious motive, ladder sing, and violates accepted moral standards. When we're talking about looking at the morality of conduct, we must talk about eminency and the level of harm. So the government is trying to... Why do we have to talk about eminence? Why is that required? Under the precedence, it's required because of the statute's plain language. But that begs the question, if you're looking at a statute that has eminence, of course that's required. But the question is whether or not a statute is required to have that element in order to meet the definition. And you have told me there is no case that says that. That's correct. There's no case that says that eminence must be required in a reckless mens rea crime to meet the threshold of crime of moral turpitude. But we just have the progeny to look at in terms of the case law. And in deciding to expand mens rea from intentional conduct to recklessness, the BIA was making a leap. So the government says, I concede that. It is clear that the BIA and the Ninth Circuit has gone with recklessness. But in finding and continuing to expand, which if this case, if this particular statute is found to be a crime of moral turpitude, it would be an expansion and it would be an unlawful expansion, is Petitioner's argument, because of the lack of actual risk and because of the lack of eminency. The reckless mens rea is a slippery slope mens rea in terms of how much risk, how much harm, where are we going to draw the line in terms of crime of moral turpitude and finding the morality of conduct. And Petitioner would argue that the eminency and the death requirement is sort of a bright line that the court can properly give notice to defendants, properly give notice to underlying courts that these particular crimes meet the threshold of crime of moral turpitude. And that threshold is high. Only truly unconscionable conduct surpasses the threshold of moral turpitude. That's out of Ramirez-Contreras, and that's from last summer from the Ninth Circuit. That is because the conduct must be sufficiently reprehensible, and Petitioner maintains that the statute is overbroad, and because of that it allows conduct that is not sufficiently morally turpitudinous, reprehensible, base, vile, because we're taking out the foreseeability and we're creating a zone of danger for potential victims to enter the zone of danger at later times. And that was all in my brief regarding the commentary for the actual drafting of the statute. All right. Thank you, counsel. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision making.
judges: Rawlinson, Nguyen, Garbis